**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| AUGUSTA NATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: _____ |
| | ) | |
| JOHN SPENCER MANN d/b/a | ) | |
| EXPERIENCE AUGUSTA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Augusta National, Inc. ("ANI") and files this Complaint against

John Spencer Mann d/b/a Experience Augusta, LLC (hereinafter "Defendant"), and respectfully

shows the Court the following:

## <u>INTRODUCTION</u>

1.      ANI hosts an annual golf tournament known around the world as the Masters

Tournament®.  The 2019 Masters Tournament practice rounds begin on April 8, 2019, and the

Masters Tournament will take place on April 11-14, 2019.  ANI is the only source of tickets to

the Masters Tournament and to its hospitality venue known as Berckmans Place®.

2.      Defendant operates at least two websites (www.experienceaugusta.com and

www.berckmansplacetickets.com) for the purpose of advertising, soliciting, acquiring and selling

tickets to the Masters Tournament in violation of the contractual agreements associated with

those tickets.

3.      ANI files this action seeking to immediately halt Defendant's illegal conduct, as

follows:

a.      ANI seeks to immediately halt the operation of the domain <www.berckmansplacetickets.com> (the "Domain") because, among other things, it infringes upon ANI's trademarks, fraudulently misrepresents a connection with ANI, violates ANI's trade dress and copyright through images on the webpage, and breaches the contract entered into between ANI and Masters Tournament ticket holders.  Below is a screenshot of the landing page at the Domain:



b.      ANI seeks to immediately enjoin and restrain Defendant from dealing in Masters Tournament and Berckmans Place tickets in violation of ANI's ticket contracts.

c.      ANI seeks an affirmative injunction requiring Defendant to identify all Berckmans Place and Masters Tournament tickets it has acquired in violation of the ticket contracts.

4.      ANI requests that a temporary restraining order be entered immediately and that a hearing be set promptly so that an interlocutory injunction may be entered prior to April 1, 2019.

## THE PARTIES, JURISDICTION AND VENUE

5.      ANI is a corporation duly organized and existing under the laws of the State of Georgia with its headquarters and principal place of business at 2604 Washington Road, Augusta, Georgia 30904.

6.      Founded in 1932, ANI owns and operates the Augusta National® Golf Club and the world-famous Masters Tournament in Augusta, Georgia, which is commonly known as the Masters®.

7.      ANI's business is primarily conducted and principally located in Augusta, Georgia.

8.      Upon information and belief, Defendant John Spencer Mann is an Alabama resident who resides at 1114 Grayton Court, Auburn, AL 36830.  Defendant's business is conducted in interstate commerce with substantial contacts with the State of Georgia, and specifically Augusta, Georgia.

9.      Defendant operates using the name Experience Augusta, LLC, but undersigned counsel has not been able to find that entity name registered as a limited liability company.  On information and belief, Defendant actually operates as a sole proprietorship.

10.     Defendant has an office for conducting business in Augusta, Georgia. Defendant's website indicates that "All Berckmans Place tickets will be picked up at our office close to the course on the morning of the round you are attending."  *See* http://www.berckmansplacetickets.com/#about-us (last visited on March 8, 2019) (emphasis added).  Defendant's "LinkedIn" account provides as follows:

> Experience Augusta, LLC is a corporate hospitality company specializing in VIP Masters golf tournament packages including private airfare, exclusive homes, and access to Berckmans Place, Clubhouse, and Trophy Room. We currently provide

packages to multiple Fortune 500 companies and other businesses across the globe. We are located just down Azalea Drive, an easy walk to Augusta National.

See https://www.linkedin.com/company/experienceaugusta/about/ (last visited March 8, 2019) (emphasis added).

11.     This is an action for breach of contract seeking to enjoin the purchase, sale and use of Berckmans Place and Masters Tournament tickets procured in violation of the contract entered into by Berckmans Place ticket recipients and the ticket contracts applicable to all Berckmans Place and Masters Tournament tickets.

12.     On information and belief, the volume of business done by the Defendant in purchasing and selling Masters Tournament and Berckmans Place ticket easily exceeds $100,000.

13.     This is also an action for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and specifically 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(d). This is an action for injunctive relief, and related relief, seeking to enjoin the use of the Domain, and require the transfer of the Domain to ANI under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

14.     This is also an action for violation of copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 501, et seq.

15.     This Court has subject matter jurisdiction over the federal trademark, trademark dilution, and copyright claims under 28 U.S.C. §§ 1331 and 1338(a), over claims of unfair competition relating thereto under 28 U.S.C. § 1338(b), and over the claims to the Domain under 15 U.S.C. § 1125(d).

16.     This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

17.     This Court has jurisdiction over the property in question and the corporate person of the Defendant.  Defendant knowingly and intentionally directed, targeted, and inflicted injurious consequences upon ANI and other residents and citizens of the State of Georgia. Defendant transacts business within this state, committed a tortious act or omission within this state, and it regularly does or solicits business, engages in any other persistent course of conduct, and derives substantial revenue from goods used or consumed or services rendered in this state.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).  This action arises out of wrongful acts committed by Defendant in this judicial district and which subjects Defendant to personal jurisdiction here.  Because a substantial part of the events giving rise to these claims occurred in this judicial district, venue is proper under 28 U.S.C. § 1391(b)(2).

## BACKGROUND FACTS

19.     Since 1934, ANI has sponsored and hosted the annual Masters Tournament, one of the four major championships in professional golf.  The Masters Tournament and the Augusta National Golf Course are viewed each year by tens-of-thousands of patrons, in person, and millions more internationally on television and through the Internet. *See Augusta Nat., Inc. v. Nw. Mut. Life Ins. Co.*, No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *2-4 (S.D. Ga. 1976).

### *Berckmans Place and Masters Tournament Tickets*

20.     Since 2012, ANI has operated a hospitality venue at the Masters Tournament known as Berckmans Place.  Berckmans Place is the only Hospitality Program of the Masters Tournament. The state-of-the-art hospitality venue and associated amenities provide patrons and

guests with an experience consistent with the traditions and quality of the Masters and Augusta National Golf Club.

21.    Berckmans Place tickets are sold separately from other Masters Tournament tickets.  They are issued pursuant to a contract signed by the recipients in the form attached hereto as Exhibit "A."

22.    The Berckmans Place Agreement provides as follows:

> 8.    (a) Neither this Agreement, the Ticket(s) to be provided pursuant hereto nor the rights and privileges conferred hereby or attendant to Berckmans Place amenities, shall be offered for sale, sold, assigned, rented or otherwise transferred whatsoever. Additionally, tickets shall not be offered or transferred, to ticket brokers, travel agents, or awarded to third parties through any type of advertising, promotion, or contest (including, without limitation, raffles, drawings, auctions, contests, prizes or sweepstakes); PROVIDED, HOWEVER, Buyer is free to personally allow third parties of its selection to use Berckmans Place Ticket(s) and its privileges and amenities for any day or days… (b) The offer for sale, re-sale or other transfer of Tickets for value is prohibited hereby and may be restricted by Georgia law. O.C.G.A. § 43-4B-25, et seq. A Berckmans Place Ticket or any other Ticket to the Masters obtained in contravention of these provisions will not be honored; the holder removed from the premises; and all rights hereunder cancelled.
>
> 9.    Buyer shall be responsible for informing all users of Berckmans Place Tickets of the terms and provisions hereof; the requirements of a ticket holder to observe ANI rules, policies, including those requiring normal golfing etiquette, proper attire, and all provisions printed on the back side of Berckmans Place Tickets. Buyer will be responsible for compliance and actions of the user of its Ticket(s).

23.    The agreement on the back of the Berckmans Place and other Masters Tournament tickets is attached hereto as Exhibit "B."  It provides in pertinent part as follows:

> D.  ANI is the only authorized source/seller of Masters® Tickets.  Ticket(s) may not be offered for sale, sold or rented through/to third party resellers including, but not limited to, ticket brokers, travel agents, hospitality entities or scalpers. Holders of Tickets acquired from such parties, by whatever means, may be excluded from attendance to the Tournament.  Offers for sale, re-sale or other transfer of Ticket(s) for a value in excess of face value is prohibited by this Agreement and also is restricted by Georgia law O.C.G.A. § 43-4B-25, et seq. Ticket(s) may not be used for advertising or promotional purposes (such as prizes,

raffles, auctions, contests, or sweepstakes). A Ticket obtained in contravention of these provisions will not be honored and the original Ticket Purchaser subject to the permanent loss of Ticket(s).

*   *   *

F. The Ticket Purchaser is responsible for explaining all provisions of this Agreement to any subsequent user or Holder of the Ticket ("Ticket Holder" or "Holder"), and is responsible for the conduct of any such Ticket Holder. A Ticket Holder is subject to all terms of this Agreement.

*   *   *

I. Images of Augusta National Golf Club or the Masters Tournament, or data obtained with cameras, videos, and/or audio devices or other means cannot be used for broadcast, publication or any commercial purposes under any circumstances.

24. Patrons acquiring Masters Tournament tickets must verify their agreement to these terms when applying for and purchasing tickets at tickets.masters.com.

### Trademarks

25. ANI has obtained United States Trademark Registrations for the Berckmans Place mark (hereinafter the "Berckmans Mark").  (*See* U.S. Reg. Nos. 4529896 and 4633449). The United States Trademark Registrations for the Berckmans Mark are valid, unrevoked, and subsisting, and constitute prima facie evidence of Plaintiff's exclusive ownership of the Berckmans Mark.

26. ANI operates a website at the domain BerckmansPlace.com, which provides information to patrons about Berckmans Place.  ANI also operates a website at tickets.masters.com, from which consumers may apply for Masters Tournament tickets.

27. Since 2012, ANI has continuously used the Berckmans Mark in connection with entertainment in the nature of golf tournaments; organization of golf tournaments; special event

planning for business purposes; and other products and services.  ANI has continuously used the Berckmans Mark since long before the Defendant first began to use the mark.

28.     ANI owns numerous federal trademark registrations pertaining to the names "Augusta," and "Augusta National," and "Augusta National Golf Club," including the following trademarks:  U.S. Reg. Registration Nos.  4411255, 4405349, 2462877, 2732357, 3652012; *see also Augusta Nat'l v. Sir Christopher Hatton, Inc.,* Civil Action No. 1-96-CV-1501-CAM, 1996 U.S. Dist. LEXIS 21707, at *3 (N.D. Ga. Dec. 1996) (recognizing and enforcing the foregoing trademark rights).

29.     ANI owns numerous federal trademark registrations for the terms Masters and Masters Tournament (hereinafter referred to as the "Masters Marks"). *See, e.g.,* U.S. Reg. Nos. 4242598, 4392699, 3824642, 3824636, 3824437, 3821375, 3821365, 1247671, 1480185; *Augusta Nat., Inc. v. Nw. Mut. Life Ins. Co.,* No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *4 (S.D. Ga. 1976) ("[T]he Masters Tournament has become world-renowned as the epitome of such contests in the field of golf. Whenever the terms 'The Masters' or 'The Masters Tournament,' or 'The Masters Golf Tournament' are used, they have come to be understood by the cognoscenti as well as the ignoranti of the game of golf as referring to the plaintiff's annual tournament.").

30.     All of the ANI marks referenced herein by U.S. registration numbers are referred to herein collectively as the "Marks."  The Marks are strongly associated with ANI, particularly in the golfing industry.  They are world famous and perhaps the most recognized trademarks in all of golf.  All of the Marks have been extensively used, and ANI has expended considerable effort and expense in promoting them in connection with numerous products and services relating to the sport of golf.  Through ANI's long and extensive use and promotion of the Marks,

they have become strongly identified by the consuming public with ANI.  Accordingly, ANI enjoys significant goodwill, as well as strong and enforceable rights in the Marks.

### The Internet and Domain Name Registration

31.    The Internet is a worldwide network of computers that enables individuals and organizations to access and share information by means of "web pages" and "web sites," so-called because the pages are reached by "links" from one to another, creating the "worldwide web" or "web."

32.    A web page is a computer data file that is published or "served" to the Internet by one computer and presents itself as a graphical "page" viewable by other computers on the Internet.  It can include names, pictures, text, sound, and links to other web pages.  A collection of related web pages published by the same owner is typically referred to as a web site, which is identified on the Internet by a unique address, similar to a street address, and commonly referred to as a "domain name."

33.    The Internet is divided into several "top level" domains, such as ".com," ".net," and ".org."  Domain names with the ".com," ".net," and ".org." designations can be registered with Network Solutions, Inc. ("NSI"), CORE, or other domain name registrars for a de minimis fee.  The registrars register domain names on a first-come, first-serve basis.  The registrars do not make a threshold determination regarding a registrant's right to use a domain name, other than to insure that no two domain names are identical.

### Defendant's Infringement

34.    On April 6, 2018, Defendant registered the Domain BerckmansPlaceTickets.com, which the Defendant uses to advertise, solicit, sell and purchase Berckmans Place tickets.

35.     As an express condition of registering a domain name, an applicant must represent and warrant that: (1) the applicant's statements are true; (2) the applicant has the right to use the requested domain name; (3) the use or registration of the domain name does not interfere with the rights of any third party in any jurisdiction with respect to trademark, service mark, trade name, company name, or any other intellectual property rights; and (4) the applicant is not seeking to use the domain name for any unlawful purpose, including unfair competition. *See*  https://www.icann.org/resources/pages/policy-2012-02-25-en  (last visited on March 11, 2019); *Panavision Int'l, Ltd. P'ship v. Toeppen*, 141 F.3d 1316, 1318 (9th Cir. 1998).

36.     Defendant is not in any way affiliated or associated with ANI and has absolutely no right to operate the Domain BerckmansPlaceTickets.com.

37.     In registering the Domain, Defendant falsely represented and warranted that he had the right to not only register the Domain, but that Defendant's registration and/or use of the Domain did not interfere with the right of any third party, and that the Domain would not be used for any unlawful purpose.

38.     Defendant's use of the Domain causes public confusion and tarnishes the goodwill and reputation of ANI. In addition, Defendant's use of the Domain to drive traffic from ANI's website, for the purchase and sale of Berckmans Place tickets in breach of ANI's contract, via a Domain that uses the trademark of ANI, collectively constitutes unfair competition.

39.     Defendant's Domain is confusingly similar to ANI's Berckmans Mark. Where an entity uses another's mark in a domain name with only the addition of a generic term, the added generic term is not a distinguishing feature and may enhance the likelihood of confusion.

40.     The addition of the generic term "tickets" to the Berckmans Place Mark in the Domain does not distinguish the Domain from ANI's Berckmans Place Mark and causes the consumer to believe that the ticket selling website is somehow affiliated with ANI.

41.     Defendant has no rights or legitimate interests in the Domain.

42.     Defendant is not making use of the Domain in connection with a bona fide offering of goods or services.  The incorporation of ANI's Berckmans Mark into the Domain, in fact, will lead consumers to believe the Defendant's goods and services are associated with ANI or authorized by ANI.

43.     Moreover, the fact that Defendant is selling tickets to ANI's Masters Tournament in violation of ANI's ticket contracts means that Respondent is not making a bona fide offering of goods and services under the Domain.

44.     Defendant's registration of the Domain was clearly intended to target ANI's goodwill and trademarks. Defendant has no connection or affiliation with ANI, nor has it at any time received from ANI a license or consent to use the Berckmans Mark in a domain name or in any other manner. Defendant is not an authorized reseller of Berckmans Place or Masters Tournament tickets, and it is not a licensed ticket broker in the State of Georgia.

45.     Defendant has continuously and systematically targeted the unauthorized purchase and unauthorized resale of Berckmans Place and Masters Tournament tickets.

46.     Defendant is familiar with the rules, policies, customs and practices of ANI in barring the secondary sale of Berckmans Place and Masters Tournament tickets for profit.

47.     For example, the Domain indicates as follows:

Are Berckmans Place tickets available to the general public from Augusta National?
No. Augusta National only gives Berckmans Place access to corporate sponsors and friends of the club.

> How are you able to sell Berckmans Place tickets?
> We have several relationships with the corporate sponsors and friends of the club mentioned above. Through those relationships, we are able to acquire tickets and provide them to you.

48.     When Defendant attempts to sell Berckmans Place tickets, it requires consumers to sign the contract attached hereto as Exhibit "C."  Defendant's contract provides in pertinent part

> that purchasing Masters badges on the secondary market is against the rules of Augusta National Golf Club (ANGC). Any buying or selling of badges is strictly prohibited by ANGC. If at any time ANGC discovers that your badges have been bought on the secondary market, they could deem the badges invalid and refuse entry.

49.     ANI has previously sent Defendant a demand letter to stop dealing in Masters Tournament tickets, a true and accurate copy of which is attached hereto as Exhibit "D."  It states:

> ANI hereby respectfully demands that you immediately cease and desist from further advertisement of the purchase / selling / or offering giveaways of Masters® tickets on your website and social media sites, and that you withdraw from any further actions in marketing your purchase of Masters® Tickets.

50.     Despite Defendant's clear awareness that it is prohibited from buying and selling Berckmans Place and Masters Tournament tickets, Defendant represents to the public that it has full authorization and authority to sell tickets.

51.     Defendant's website at the Domain states, "We are a private company who provides Berckmans Place tickets on the secondary market to groups all over the world.  We have several relationships with the corporate sponsors and friends of the club mentioned above. Through those relationships, we are able to acquire tickets and provide them to you."

52.     Defendant's contract further states that it "represents and warrants that … Seller has full right to enter into this Agreement and offer the badges for sale."

53.     These statements on the Domain and in the contract mislead the public into believing that Defendant somehow has authorization to sell tickets when it does not.

54.     Defendant is not even a registered ticket broker as required by Georgia law, so its entire business misleads the public because Defendant has no legal right to resell any tickets without a license.

55.     In an effort to conceal its conduct from ANI and hide the identity of the badges that it sells, Defendant requires buyers to warrant that they have "no affiliation with ANGC, that Buyer is not purchasing these badges on behalf of ANGC, and that Buyer has not been asked to purchase badges by ANGC or anyone associated with ANGC."

56.     Hence, unless a person joins in the Defendant's scheme to hide conduct from ANI, which is a breach of contract, then he cannot do business with the Defendant.

## COUNT I
## BREACH OF CONTRACT

57.     The foregoing allegations of Paragraphs 18 through 56 are incorporated herein by reference as if fully restated here.

58.     All persons holding Masters Tickets and Berckmans Place tickets are subject to the terms of the ticket contract, which provides as follows:

> D.  ANI is the only authorized source/seller of Masters® Tickets.  Ticket(s) may not be offered for sale, sold or rented through/to third party resellers including, but not limited to, ticket brokers, travel agents, hospitality entities or scalpers….

> \*                             \*                             \*

> F.   The Ticket Purchaser is responsible for explaining all provisions of this Agreement to any subsequent user or Holder of the Ticket ("Ticket Holder" or "Holder"), and is responsible for the conduct of any such Ticket Holder. A Ticket Holder is subject to all terms of this Agreement.

59.     All persons who hold Berckmans Place tickets are subject to the terms of the separate Berckmans Place ticket contract, which provides as follows:

>   8.      (a) Neither this Agreement, the Ticket(s) to be provided pursuant hereto nor the rights and privileges conferred hereby or attendant to Berckmans Place amenities, shall be offered for sale, sold, assigned, rented or otherwise transferred whatsoever. Additionally, tickets shall not be offered or transferred, to ticket brokers, travel agents, or awarded to third parties through any type of advertising, promotion, or contest …

60.     As a holder of tickets, Defendant is bound by the terms of the Masters Tournament and Berckmans Place ticket contracts.

61.     Defendant operates as an illegal ticket broker who is selling tickets without a license in violation of O.C.G.A. § 43-4B-28 ("it shall be unlawful for any person other than a ticket broker to resell or offer for resale any ticket of admission or other evidence of the right of entry to any athletic contest … for a price in excess of the face value of the ticket.").  *See also* O.C.G.A. § 43-4B-28 ("Any ticket broker offering to resell tickets to an athletic or entertainment event through any printed, broadcast, or Internet advertising shall include in such advertising the license number of such ticket broker offering such tickets for resale.")

62.     Pursuant to O.C.G.A. § 43-4B-25(b), an owner or sponsor of an event, such as ANI, may contractually restrict the resale of a ticket to such the event by giving notice of such restriction on the back of the ticket, which ANI has done.

63.     Defendant has breached O.C.G.A. § 43-4B-25 and ANI's ticket contracts both by buying and by selling tickets.

64.     Defendant's "linkedin" account provides as follows:

>   Experience Augusta, LLC is a corporate hospitality company specializing in VIP Masters golf tournament packages including private airfare, exclusive homes, and access to Berckmans Place, Clubhouse, and Trophy Room. We currently provide packages to multiple Fortune 500 companies and other businesses across the globe. We are located just down Azalea Drive, an easy walk to Augusta National.

*See* https://www.linkedin.com/company/experienceaugusta/about/ (last visited March 8, 2019)

65.     Defendant threatens to and will continue to breach ANI's ticket contracts unless the Court intervenes to stop the Defendant's conduct.  ANI has previously demanded that Defendant cease its conduct, which demand was ignored.

66.     ANI is therefore entitled to enjoin the continued breach of the contracts through conduct of the Defendant in buying and selling tickets, to learn the identity of the tickets purchased and sold by the Defendant, and the identity of the persons who have purchased tickets from or sold tickets to the Defendant.

67.     The damage to ANI from the Defendant's conduct is irreparable and cannot be remediated simply by a money judgment.

68.     ANI is entitled to damages for the Defendant's breach of contract in an amount to be determined by the Court.

<u>**COUNT II**</u>
<u>**INTENTIONAL INTERFERENCE WITH CONTRACTUAL**</u>
<u>**AND BUSINESS RELATIONSHIPS**</u>

69.     The foregoing allegations of Paragraphs 18 through 56 are incorporated herein by reference as if fully restated here.

70.     Persons who acquire Berckmans Place and Masters Tournament tickets do so subject to the terms of the standard ticket contract, which provides that

> D.  ANI is the only authorized source/seller of Masters® Tickets.  Ticket(s) may not be offered for sale, sold or rented through/to third party resellers including, but not limited to, ticket brokers, travel agents, hospitality entities or scalpers….

71.     Persons who acquire Berckmans Place tickets from ANI do so pursuant to a second contract that provides as follows:

8.      (a) Neither this Agreement, the Ticket(s) to be provided pursuant hereto nor the rights and privileges conferred hereby or attendant to Berckmans Place amenities, shall be offered for sale, sold, assigned, rented or otherwise transferred whatsoever. Additionally, tickets shall not be offered or transferred, to ticket brokers, travel agents, or awarded to third parties through any type of advertising, promotion, or contest (including, without limitation, raffles, drawings, auctions, contests, prizes or sweepstakes); PROVIDED, HOWEVER, Buyer is free to personally allow third parties of its selection to use Berckmans Place Ticket(s) and its privileges and amenities for any day or days…

9.      Buyer shall be responsible for informing all users of Berckmans Place Tickets of the terms and provisions hereof; the requirements of a ticket holder to observe ANI rules, policies, including those requiring normal golfing etiquette, proper attire, and all provisions printed on the back side of Berckmans Place Tickets. Buyer will be responsible for compliance and actions of the user of its Ticket(s).

72.     Defendant is a ticket broker who is actively soliciting persons to violate the ticket contracts by selling tickets to Defendant.

73.     Defendant's website at experienceaugusta.com provides as follows:



*See* www.ExperienceAugusta.com (last visited March 8, 2019).

74.     Defendant's Facebook page states: "Do you have extra MASTERS BADGES? We are buying all practice and tournament rounds, Berckmans Place, Club House, etc. Please

message    us    directly    if    you    have    anything    extra    to    sell."    See
https://www.facebook.com/experienceaugustallc/ (last visited March 8, 2019).

75.    In addition, Defendant is actively seeking to entice persons to purchase tickets from a ticket broker in violation of the ticket contracts at experienceaugusta.com, on Facebook, and on the Domain.

76.    Defendant's foregoing actions are improper or wrongful, and they are committed by the Defendant without privilege.

77.    Defendant has acted purposely and with malice with the intent to injure ANI.

78.    Defendant has induced a breach or breaches of contractual obligations by enticing and causing third parties to breach their contracts with ANI.

79.    Defendant's tortious conduct proximately causes irreparable harm to ANI, and if it is permitted to continue, it will continue to cause irreparable damage to ANI.

80.    A "third party may be subject to injunctive relief in such a case where there is evidence that it maliciously aided and abetted the breach of restrictive covenants with knowledge thereof." *Bijou Salon & Spa, LLC v. Kensington Enters.*, 283 Ga. App. 857, 861, 643 S.E.2d 531, 534 (2007).  ANI is entitled to enjoin the Defendant's conduct here.

81.    ANI is entitled to damages for the Defendant's intentional and tortious interference with its contractual and business relationships in an amount to be determined by the Court.

## COUNT III
## UNJUST ENRICHMENT

82.    The allegations in Paragraphs 18 through 56 are incorporated herein by reference as if fully restated here.

83.     By the unauthorized purchase and resale of Berckmans Place and Masters Tournament tickets and through the use of ANI's goodwill, property and intellectual property, Defendant has obtained significant financial benefits from ANI.

84.     Defendant acquired these benefits voluntarily and with full knowledge that its conduct was in violation of contract and law.

85.     Defendant has retained the benefits under such circumstances that make it unjust and inequitable for Defendant to retain these benefits without paying ANI the value of the benefits Defendant acquired.

86.     Defendant is therefore liable to ANI in an amount to be proved at trial.

## COUNT IV
## CONVERSION

87.     The allegations in Paragraphs 18 through 56 are incorporated herein by reference as if fully restated here.

88.     ANI has the exclusive right to possess, control, and sell Berckmans Place tickets and Masters Tournament tickets to the public, and it has the sole right to dictate, limit, control and terminate the licenses associated with those tickets except to the limited extent it has ceded that control to ticketholders through the contract terms on the back of its tickets.

89.     Defendant knew that ANI is the owner of the Marks, the Berckmans Place tickets and the Masters Tournament tickets, and the licenses associated with the tickets, and that Defendant has no legal right to use the Marks and sell the Berckmans Place tickets and Masters Tournament tickets and the licenses associated therewith.

90.     Defendant is wrongfully interfering with ANI's rights by engaging in the unauthorized sale of Berckmans Place tickets, Masters Tournament tickets, unlawful business

practices, and other violations of federal and state law in direct conflict with ANI's rights and interests.

91.     Defendant's conduct has resulted in substantial harm and damage to ANI for which ANI is entitled to a judgment in an amount to be proved at trial.

92.     Defendant's conversion and continuing hostile possession of, and interference with ANI's rights to, ANI's property and intellectual property causes harm that it irreparable and difficult to quantify.  ANI is therefore entitled to enjoin the conversion and recover its property from the Defendant.

## COUNT V
## UNFAIR COMPETITION/DECEPTIVE TRADE PRACTICES

93.     The allegations in Paragraphs 18 through 56 are incorporated herein by reference as if fully restated here.

94.     Defendant's conduct in the unauthorized sale of Berckmans Place tickets, Masters Tournament tickets, unlawful business practices, and other violations of federal and state law as described above is willful and constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of O.C.G.A. § 10-1-373.

95.     ANI has suffered damage and is likely to continue suffering damage in the future, as a direct and proximate result of Defendant's conduct.

96.     Pursuant to O.C.G.A. § 10-1-373, ANI is entitled to entry of an injunction enjoining Defendant from further violations of the statute.

97.     O.C.G.A. § 10-1-373 further provides that ANI is entitled to recover its attorneys' fees and court costs.

## COUNT VI
## CIVIL CONSPIRACY/FRAUD

98.     The allegations of Paragraphs 18 through 56 are incorporated herein by reference as if fully restated here.

99.     Defendant has conspired with other persons to tortiously interfere with ANI's contracts and breach ANI's contracts.  Defendant solicited and continues to solicit persons to purchase and to sell Masters Tournament tickets in violation of ANI's contracts.

100.    Defendant will only sell Masters Tournament tickets to persons who agree to join the conspiracy by not alerting ANI of the conspiracy or notifying ANI of the ticket sales.

101.    Defendant has conspired with ANI ticketholders to form a brokerage for ANI tickets in violation of ANI's ticket contracts, in effect creating a black market.

102.    In the process of conspiring to sell Masters Tournament tickets, Defendant fraudulently misrepresents its legal capacity to do so to the public in the following statements:

> Are Berckmans Place tickets available to the general public from Augusta National?
> No. Augusta National only gives Berckmans Place access to corporate sponsors and friends of the club.
>
> How are you able to sell Berckmans Place tickets?
> We have several relationships with the corporate sponsors and friends of the club mentioned above. Through those relationships, we are able to acquire tickets and provide them to you.

See http://www.berckmansplacetickets.com/#home (last visited March 8, 2019).  Defendant thus falsely represents to the public that others cannot sell Berckmans Place tickets, but the Defendant is "able to acquires tickets and provide them to you" as a result of its relationships.

103.    Defendant also represents to each buyer that it has "full right to enter into this Agreement and offer the badges for sale."  That representation is completely false, as Defendant

is expressly excluded by ANI from buying or selling Berckmans Place and Masters Tournament tickets.

104.    Defendant's conduct demonstrates a concerted action with a common design to acquire and sell Masters Tournament tickets in violation of ANI's ticket contract.

105.    Moreover, Defendant does so through the blatant and willful violation of ANI's intellectual property rights as demonstrate *infra*.

106.    ANI is entitled to damages for Defendant's conduct and to an injunction preventing the Defendant from continuing to conspire to harm ANI.

**COUNT VII**
**TRADEMARK INFRINGEMENT/CYBERPIRACY**

107.    The allegations of Paragraphs 18 through 56 of this Complaint are incorporated herein by reference as if fully restated here.

108.    ANI's Berckmans Mark is inherently distinctive. The public associates the Berckmans Mark exclusively with ANI's services. This is a result of the Berckmans Mark's inherent distinctiveness and its distinctiveness acquired through extensive use in commerce in connection with the Masters Tournament and ANI's other products and services.

109.    By its unauthorized and unlawful actions, the Defendant has, without ANI's consent, used and/or is using in commerce a reproduction, counterfeit, copy, or colorable imitation of the Berckmans Mark. The Defendant's actions are likely to cause confusion, or to cause mistake, or to deceive in violation of 15 U.S.C. § 1114(1).

110.    By committing the acts alleged herein, the Defendant has intentionally, knowingly, and willfully infringed ANI's Berckmans Mark.

111.    Defendant has used and/or registered the Domain BerckmansPlaceTickets.com, which includes ANI's registered Berckmans Mark.

112.     The Defendant has done so with a bad faith intent to profit from the wrongful use of the Berckmans Mark, such intent being demonstrated by, among other things: Defendant's use of ANI's registered Berckmans Mark to compete against ANI; Defendant's use of the Berckmans Mark for commercial gain; Defendant's attempts to use ANI's Berckmans Mark to divert customers searching for ANI's online location to a site owned by the Defendant; and Defendant's attempt to use ANI's Berckmans Mark in order to violate ANI's contracts and induce others to do so as well. All of the foregoing cause harm to the goodwill associated with ANI's Marks.

113.     For example, Defendant intentionally purchases Google AdWords advertising so that its website appears first on Google after a search for Berckmans Place:



114.     The Defendant actively and knowingly caused the infringement.

115.     Defendant's actions constitute cyberpiracy, a violation of 15 U.S.C. § 1125(d).

116.     ANI has been injured by defendant's violation of 15 U.S.C. § 1125(d).

117.    ANI is entitled to an order transferring the offending domain name to ANI. ANI has been harmed by the defendant's actions in amounts to be determined and is entitled to recover same from the defendant.

118.    ANI's Masters Mark is inherently distinctive, and the public associates the Masters Mark exclusively with ANI's services. *Augusta Nat., Inc. v. Nw. Mut. Life Ins. Co.,* No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *4 (S.D. Ga. 1976).  This is a result of the Master Mark's inherent distinctiveness and its distinctiveness acquired through extensive use in commerce throughout the world in connection the Masters Tournament and ANI's other products and services.

119.    Defendant has also ubiquitously infringed on ANI's Masters Mark.   Defendant's primary mark representing it business displays the term "Masters" prominently as follows:



120.    Defendant's other internet marketing also references the Masters Mark, such as the below Google ad referencing "Masters 2019":

Berckmans Place Tickets | Masters 2019 | Order Today
[Ad] www.berckmansplacetickets.com/ ▾
Limited **Berckmans Place** Inventory for 2019. Order today to ensure your access! Make An Inquiry.
FAQs · Inquire Now · About Us

121.    Defendant's logo and advertising using ANI's Berckmans Place and Masters Tournament Marks are: (1) likely to confuse or deceive consumers into believing Defendant has

some affiliation, connection, or association with ANI, or that the tickets it sells are in some way licensed, endorsed, or approved by ANI, when they are not; and (2) likely to dilute the distinctive quality of ANI's famous Marks.

122.    Defendant's marketing and advertising contain numerous misleading statements about ANI and the items for sale on Defendant's Domain.

123.    Specifically, the Defendant's website advertisements contain the following false statements:

> We have several relationships with the corporate sponsors and friends of the club mentioned above. Through those relationships, we are able to acquire tickets and provide them to you.

> We are a private company who provides Berckmans Place tickets on the secondary market to groups all over the world.

124.    The statements are also intended to falsely and improperly bolster Defendant's reputation by implying that it has a connection or affiliation with ANI, an ability to acquire Berckmans Place tickets in direct violation of ANI's contracts, and the authority to sell them to consumers without recourse.

125.    Defendant's statements are published in interstate commerce.

126.    Defendant's false statements have caused and are likely to cause competitive or commercial injury to ANI.

127.    As a direct and proximate result of Defendant's conduct, ANI has suffered damages in an amount to be proved at trial. In addition, ANI is entitled to treble damages, punitive damages, and its costs and attorneys' fees. Defendant's actions are willful, wanton, and accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

128.    The harm caused by Defendant's conduct is irreparable and difficult, if not impossible, to quantity.  ANI is therefore entitled to a temporary, interlocutory and permanent injunction enjoining the foregoing conduct of the Defendant.

## COUNT VIII
## ILLEGAL USE OF ANI IMAGES/TRADE DRESS/ COPYRIGHT VIOLATIONS

129.    The allegations of Paragraphs 18 through 56 of the Complaint are incorporated herein by reference as if fully restated here.

130.    Augusta National Golf Course is one of the most famous golf courses in the world. Since 1934, it has hosted the annual Masters Tournament, one of the four major championships in professional golf.  It is the only major played each year at the same course, so it is the most visible and well-recognized golf course in the world.

131.    The Masters Tournament "is acknowledged to be one of the greatest sporting events of each year, and because of the manner in which it is staged and conducted, it has come to symbolize, universally, excellence in a sports production. Among golfers, the desire to win one of plaintiff's annual tournaments is commensurate with the tournament's fame. In reality, to win one of these annual tournaments is to achieve instant success in golf.  In sum, the Masters Tournament has become a true classic event in the world of sports not only because its prizes are eagerly sought, but also because of the unique manner in which the tournament is run and the high reputation of the plaintiff." *Augusta Nat., Inc. v. Nw. Mut. Life Ins. Co.*, No. 176-186, 1976 U.S. Dist. LEXIS 12120, at *4-5 (S.D. Ga. Nov. 24, 1976)

132.    Augusta National Golf Course is often the number one ranked course in Golf Digest's list of America's 100 greatest courses http://www.golfdigest.com/golf-courses/2015-02/100-greatest-courses-lead-ron-whitten    (last    visited    March    8,    2019).;

https://www.golfdigest.com/gallery/americas-100-greatest-golf-courses-ranking   (last   visited

March 8, 2019).

133.   The twelfth hole at Augusta National Golf Course is referred to as Golden Bell.

134.   It is an iconic golf hole that is readily identifiable to golf fans. It might be the

most famous hole in golf, in part, because of the numerous instances when it has taken center

stage in the final hours of the Masters Tournament, when more people are watching golf than at

any other time of year.

135.   The twelfth hole at Augusta National Golf Course also receives unsolicited

attention from media outlets around the county and the world who publish articles specifically

about this golf hole.

136.   Golden Bell is part of a collection of golf holes known as "Amen Corner," so

named by author Herbert Warren Wind in his April 21, 1958, Sports Illustrated article about

"The Fateful Corner" at the Augusta National Golf Course.

> On the afternoon before the start of the recent Masters golf tournament, a wonderfully
> evocative ceremony took place at the farthest reach of the Augusta National course—
> down in the Amen Corner where Rae's Creek intersects the 13th fairway near the tee,
> then parallels the front edge of the green on the short 12th and finally swirls alongside the
> 11th green.

See https://www.si.com/vault/1958/04/21/577676/the-fateful-corner (last visited March 8, 2019)

137.   The name Amen Corner is known around the world to reference portions of the

11th, 12th and 13th holes at the Augusta National Golf Course, and ANI owns registered

trademarks for the term Amen Corner. *See, e.g.,* U.S. Reg. Nos. 77341133, 75979779, 75172436,

86279796, 77893741, 85204613, 85204615, 77892991, and 77892925.

138.   Writing about the 1996 Masters Tournament, the New York Times offered this lead: "When Greg Norman's tee shot on the 12th hole splashed in Rae's Creek yesterday, the ball could be seen in the blue-dyed water, but his dorsal fin had disappeared."

139.   Jordan Spieth was the most recent player to add to the lore and infamy of the twelfth hole after he posted a quadruple bogey in 2016 to eliminate a three-shot lead.  The New York Times article again led with a reference to the Golden Bell: "No matter how many majors Jordan Spieth wins during his career, the 12th hole at Augusta National Golf Club will forever be the scene of heartbreak."   *See* https://www.nytimes.com/2018/04/04/sports/golf/augusta-national-12th-hole.html (last visited March 8, 2019).

140.   Numerous unsolicited news articles and publications have prominently featured Golden Bell and its significance in the history and lore of the Masters Tournament.  *See, e.g.,* https://www.golfdigest.com/gallery/masters-the-biggest-disasters-at-the-12th-hole#16; https://golfdigestme.com/masters-biggest-disasters-12th-hole/ (last visited March 8, 2019).

141.   "'Trade dress' refers to the total image and overall appearance" of a product and "may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 251 & n.3 (5th Cir.), cert. denied, 118 S. Ct. 1795 (1997).

142.   All of the golf holes make up the trade dress of Augusta National Golf Course, but the golf holes composing Amen Corner are perhaps the most well-known, well-recognized, and frequently publicized part of the trade dress of Augusta National Golf Course and the Masters Tournament.

143.   Prominently displayed at, and the most critical feature of, the landing page at the Domain is a picture a golf hole, easily recognized as Golden Bell:



144.   This image of ANI's twelfth hole is clearly placed on the Domain so as to invoke in the minds of consumers the image and appearance of Augusta National Golf Course, ANI, and the Masters Tournament.  In fact, the image is the lead for the entire webpage with virtually no other text or images distracting from its prominence and significance.

145.   The image of Augusta National Golf Course at the Domain strongly indicates that the Domain is sponsored by or affiliated with ANI, and that the display of the image has been approved by ANI.  The Domain has the potential to cause actual confusion for consumers, and the Domain's use of the ANI trade dress thus violates the Federal Lanham Act, 15 U.S.C. §1125(a) and (c), which legally protects these unique features of the Augusta National Golf Course and the Masters Tournament.

146.   The use of images replicating the trade dress of the Masters tournament also has a diluting effect on ANI's world-famous trade dress, and such dilution is prohibited by the Lanham Act, 15 U.S.C.§ 1125(c).  The Domain with the image of Golden Bell also constitutes a violation of other intellectual property laws, including Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 to 10-1-375.

147.   Masters Tournament tickets are issued pursuant to the following contractual terms:

> Images of Augusta National Golf Club or the Masters Tournament, or data obtained with cameras, videos, and/or audio devices or other means cannot be used for broadcast, publication or any commercial purposes under any circumstances.

148.   On information and belief, ANI is the owner of the copyright to the image published at the Domain.

149.   Defendant's use of the image of Augusta National Golf Club for commercial purposes constitutes a violation of the ticket contract terms and ANI's copyright protections in the image.

150.   The harm caused by Defendant's conduct is irreparable and difficult, if not impossible, to quantity.  ANI is therefore entitled to a temporary, interlocutory and permanent injunction enjoining the foregoing conduct of the Defendant.

151.   ANI is also entitled to damages in an amount to be proved at trial.

## COUNT IX
## INJUNCTIONS

152.   All of the foregoing allegations of the Complaint are incorporated herein by reference as if fully restated here.

153.   As demonstrated in the foregoing paragraphs of this Complaint, ANI is substantially likely to succeed on the merits of its claims, and there are no known defenses that would justify the conduct of the Defendant.

154.   Because of the Defendant's infringements as set forth herein, ANI has been irreparably harmed in its business, and specifically by injury to its reputation and goodwill.

155.   ANI makes considerable efforts to control its image, its Marks, and the use of its Berckmans Place and Masters Tournament tickets.  All of the Defendant's tortious actions are designed to intentionally undermine the efforts of ANI so that Defendant can make money off of the golf tournament that ANI has so steadfastly promoted and protected over the last 85 years.

156.   ANI has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.  It would be difficult, if not impossible, to quantify the damage that would be inflicted upon ANI if the Defendant's conduct is allowed to continue.

157.   Defendant's false statements, trademark infringement, breach of contract, and tortious interference with ANI's contractual relationship have caused and are likely to cause competitive or commercial injury to ANI.  The harm to the business reputation and goodwill of ANI cannot be quantified or remedied through monetary damages.

158.   ANI is being irreparably harmed by Defendant's unlawful actions, and ANI is entitled to an injunction prohibiting Defendant from making false statements about ANI, using ANI's trademarks, using ANI's copyrighted material, intentional interference with business relations, intentional interference with contracts, and civil conspiracy.

159.   ANI has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

160.   Any delay in the enforcement of the injunction requested herein may result in the loss of the ability to recover the Masters Tournament and Berckmans Place tickets and prevent ANI from enforcing its rights under the ticket contracts, a wrong for which there would be no adequate remedy.

161.   ANI is entitled to an injunction prohibiting the Defendant from (a) using or transferring the Domain, (b) utilizing ANI's images, trade dress and trademarks, (c) soliciting and advertising the unlawful purchase and resale of Berckmans Place and Masters Tournament tickets, and (d) buying and selling Berckmans Place and Masters Tournament tickets.

162.   ANI is also entitled to the affirmative disclosures of identification information for all tickets that have passed through the possession or custody of the Defendant.

163.   The undersigned counsel certifies that contemporaneously with the filing of this complaint ANI has given Defendant notice of its demands, this lawsuit, and its request for injunction in the correspondence attached hereto as Exhibit "E."

## COUNT X
## ATTORNEY FEES

164.   All of the foregoing allegations of the Complaint are incorporated herein by reference as if fully restated here.

165.   The defendant has acted in bad faith, has been stubbornly litigious, and has caused the plaintiff unnecessary trouble and expense.

166.   ANI is entitled to an award of attorney fees and costs for the expenses associated with bringing this action.

WHEREFORE, ANI prays for judgment against Defendant as follows:

A.   That prior to March 22, 2019, with or without a hearing as the Court may determine in its discretion, Defendant, and all of Defendant's agents, servants, employees, and attorneys, and all other persons in active concert or participation with it who receive actual notice of the injunction, be temporarily restrained and enjoined from, without permission from ANI:

(1)	using ANI's Masters and Berckmans Marks, any colorable imitations thereof, or any marks confusingly similar thereto;

(2)	continuing to use the Domain, which should be replaced with a parked page indicating it is no longer accessible;

(3)	 transferring to anyone other than ANI any Berckmans Place or Masters Tournament tickets currently possessed by the Defendant;

(4)	continuing to advertise for the purchase and/or sale of Berckmans Place or Masters Tournament tickets;

(5)	contracting with any third parties with respect to Berckmans Place or Masters Tournament tickets; and

(6)	otherwise deceptively or unfairly competing with ANI.

B.	That prior to March 29, 2019, that Defendant be ordered to affirmatively

(1)	identify to ANI and to the Court all Berckmans Place or Masters Tournament tickets that it has purchased or sold;

(2)	identify all persons with whom its has done business in the purchase and sale of such tickets; and

(3)	transfer and deposit with the Court for review and inspection any Berckmans Place tickets and Masters Tournament tickets currently possessed by Defendant.

C.	That an interlocutory injunction be issued granting the foregoing relief through the duration of this case and then permanently thereafter.

D.	That ANI be awarded damages in an amount to be determined at trial based on Defendant's: breach of contract, tortious interference with contracts,

conversion, unjust enrichment, conspiracy, dilution and infringement of ANI's Berckmans and Masters Marks; false designations of origin, descriptions, and representations; and unauthorized use of ANI's trade dress and copyrights.

E.     That ANI be awarded damages and restitution, in an amount to be determined at trial, under 15 U.S.C. §1117(a), for the total profits received by Defendant from, and any damages sustained by ANI, as a result of Defendant's actions.

F.     That ANI be awarded under 15 U.S.C. §1117(a) enhanced damages, up to three times the amount found as actual damages for Defendant's trademark infringement and false designations of origin, descriptions and representations, in an amount to be determined at trial.

G.     That ANI be awarded punitive damages for Defendant's oppressive, fraudulent, and malicious acts of unfair competition.

H.     That Defendant be ordered to make a written report within a reasonable period, to be filed with the Court, detailing the manner of Defendant's compliance with the requested injunctive and mandatory relief above.

J.     That ANI be awarded its reasonable attorneys' fees and costs of suit under 15 U.S.C. §1117(a) and O.C.G.A. § 13-6-11.

K.     That ANI be awarded such other relief as the Court may deem just and proper.

Respectfully submitted, this 19th day of March, 2019.

/s/ *Christopher A. Cosper*
Christopher A. Cosper
Georgia Bar No. 142020
Jordan T. Bell
Georgia Bar No. 899345
HULL BARRETT PC

801 Broad Street, Suite 700
Augusta, Georgia 30901
(t) 706/722-4481
(f) 706.722.9779
(e) ccosper@hullbarrett.com

***Counsel for Plaintiff***
***Augusta National, Inc***.

STATE OF GEORGIA )
)          **VERIFICATION**
COUNTY OF RICHMOND )

    The undersigned is the Senior Director of Business Affairs of Augusta National Inc., and in that capacity has knowledge of the matters alleged in the Complaint.  The undersigned hereby verifies that the factual allegations in the preceding Complaint are true and accurate to the best of her information and belief.

    This 18th day of March, 2019.

Sworn to and subscribed before me )
this 18th day of March, 2019. )
)

)          _Casey Coffman_
Notary Public, Richmond County, )          Casey Coffman
Georgia. )
)
Aug. 23, 2021 )
My Commission Expires: )

(OFFICIAL SEAL)
NOTARY PUBLIC GEORGIA
LORI ANN MUSSMAN
COUNTY OF COLUMBIA
My Commission Expires Aug. 23, 2021

01241388-1